The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. Good morning, counsel. This is our case number 4-230994, Wood v. Samsung SDI Company. I would ask please, counsel, for the appellant to state your name. Good morning, Your Honor. Matthew Dowling, counsel for Appellant Samsung SDI. By the way, Mr. Dowling, I understand that you might be having some technical issues, but we were able to hear you just fine, so this hopefully will work. Okay, great. Okay, and counsel for Appellate? Good morning, Your Honors. Mark Prince for Appellate Steven Wood. Okay, thank you. Mr. Dowling, you may proceed on behalf of the appellant. Thank you. Good morning. May it please the court, Your Honors, my colleague, Mr. Prince. As I just stated, my name is Matt Dowling, counsel for Appellant Samsung SDI. The issue before the court today is whether the trial court erred in denying Samsung's motion to dismiss for lack of specific personal jurisdiction over Samsung, a foreign non-resident defendant. Trial court erred as they did not perform the appropriate analysis to determine whether Samsung was subject to specific personal jurisdiction in Illinois. Plaintiff here does not dispute that Samsung is not subject to general personal jurisdiction in Illinois, as Samsung is a South Korean company, so I don't believe that to be an issue on this appeal here today. Now, the trial court failed in applying the proper test for specific personal jurisdiction under this Illinois Supreme Court's rulings in Rios and the U.S. Supreme Court's rulings in Bristol-Myers Squibb. Specifically, they were required to go through the analysis that, first, Samsung must have purposely availed themselves of the Illinois forum, and then, if that evidence was established, that there must have been a connection between the forum and the specific claims at issue here, thus the plaintiff's claims must have arisen out of or related to the in-state activities of Samsung itself. Now, speaking to the first part of the inquiry, purposeful availment, plaintiff here has provided no evidence that Samsung purposely availed itself of Illinois. They hinge their arguments and their briefs on a generalized stream of commerce theory that is not accepted under the law. Mainly, that's simply because Samsung's 18650 lithium-ion batteries that are the subject of this suit are available for purchase in Illinois that Samsung should be subject to specific personal jurisdictions simply due to that fact. They also provide examples of other numerous unrelated products which are not at issue here today, such as a Samsung Galaxy Note cell phone, golf carts, car batteries. These products aren't at issue here today. The only product at issue is an e-cigarette vaping device. Now, they mention these other products, but they don't even provide evidence that these other products themselves even contain these 18650 lithium-ion batteries. Councilman, very briefly, when you say the plaintiff's evidence, plaintiff didn't really have an original affidavit, but utilized affidavits from other cases, interrogatory responses from other cases. I just want to be clear that you have not expressed any foundational objection to any of that material? We don't believe that any of that material they cited is relevant for purposes of Illinois, the inquiry into the Illinois specific personal jurisdiction. You can argue that you're not saying, hey, that's no good because it's not a true affidavit submitted to Illinois. You're still saying we can consider it, but you think it's insufficient. Correct, Your Honor. Okay, go ahead. Thank you. The stream of commerce theory that plaintiff wants this court to accept and which they any state court in the United States simply because they place their product generally into the United States stream of commerce, and it may end up in the hands of a specific consumer in a specific state. That broad definition of the stream of commerce is not what is held by the US Supreme Court or Illinois Supreme Court. Even in worldwide Volkswagen, VW, they held that the placing of the product into the stream of commerce must be made with the expectation that the product will be purchased by the consumer in that form state. Does it have to be product at issue under purposeful availment or can other Samsung products establish purposeful availment requiring us to move on to relatedness of those products? I believe that other products could potentially provide purposeful availment if the underlying other products had similar aspects or components that created some sort of nexus under the purposeful availment claim for purposes of that part of the inquiry. Yes. Even if they retailed Samsung products, as I guess they probably do, but the record doesn't show that, unrelated to batteries, all over the state of Illinois, you're saying that for purposes of jurisdiction, they have to have purposefully availed themselves of this forum by offering this product in this jurisdiction. I think it has to be a little bit more specific than that. It can't be just any unrelated product, but yes, other sales can go into that factor of whether that defendant availed themselves of the protections of the laws of this forum. Yes. Thank you. And it doesn't have to be just product specific. It can be some relations they may have with other corporations or whatever they have in the state. Thank you. Okay. Now, I don't believe that plaintiff has provided any evidence of purposeful availment here. However, I think the main focus of this appeal, at least mine was, is that assuming, now moving on to the next step, assuming that they have satisfied this purposeful availment requirement, there is evidence in the record here provided by Samsung on the next prong concerning the relatedness of plaintiff's claims here, specifically with the e-cigarette vaping device and Samsung's conduct. So that's the next step in the analysis. And Samsung provided an affidavit here concerning its sale of these 18650 batteries. And the evidence in the record, which plaintiff hasn't provided any counter evidence of, you know, it states, the affidavit states that Samsung, what they do is they only sell these 18650 batteries to specific corporate sophisticated end users that then incorporate that battery cell into their specific product. And then what they do with those products is they sell them to the consumer. So Samsung never sells these 18650 battery cells directly to an end user consumer, like we have here in this case, the plaintiff who is using these cells to power a e-cigarette vaping device. Isn't that true? Doesn't BMW send its cars out to dealers who then sell them to customers? I mean, I'm trying to understand where you're on the line. Sure. So that's a little different than what we have here. So let me get into that next step that you're talking about. So Samsung has never sold these to be used. So they've never sold them to any sophisticated corporate end user who then puts them into e-cigarette vaping devices, right? So they sell these only to corporate end users for specific purposes. And Samsung knows what specific purposes they're selling them for before they sell them to that manufacturer, that corporation. For example, sometimes they go into a vacuum. Maybe it goes into a Dyson vacuum. Maybe it goes into a power drill tool. They know that when they sell the 18650 lithium ion cell to that corporate end user. But doesn't some of the plaintiff's evidence suggest some leakage in that chain? I mean, it's getting out in some individual format somehow. Someone, and we don't know who, we don't know if they're here. We don't know if they're in Korea or anywhere else. But someone is selling them in a manner other than what you're describing. Meaning they're not just putting them in their approved products. Correct, Your Honor. And that is an issue. But that is not that other someone is a different party from Samsung. Those are acts of a unilateral third party. Those aren't the acts of Samsung, which is what this court has to take into consideration. But when you say that they sell only to sophisticated users who've used them for this purpose, that isn't entirely true. Because some of them, whether it's by Samsung or by one of these sophisticated buyers, is using them for something other than putting them in their products. Someone is reselling them. Correct. But that someone is not Samsung, which is the point. I mean, there's no evidence of that. Correct. There's no evidence of that. Samsung's provided an affidavit of that. Even if we were to go back down on the trial court after this and do further jurisdictional discovery, that would still be the case. The affidavit would be what the affidavit is. It wouldn't change. So that someone, that third party you're talking about, those are the actions of someone else, not Samsung. And, you know, the Supreme Court in Helicopteros, they, you know, they dealt with that. And they held that the actions of a third party is not an appropriate consideration when determining whether a defendant has sufficient contacts with the foreign state. This court also, the Fourth District, has recently discussed that as well. In the Young v. Ford case, which is the November 21st, 2017 decision of this court, case site number 2017, Illinois Appellate Fourth, 170177. In that case, you discussed this unilateral third party act as well. And there, it was a Chinese company manufacturing a wheel or a wheel component. And they sold this to a Chinese facilitator. And that was what they sold it to. They sold to the Chinese facilitator who bought it from them. The Chinese facilitator then distributed it into the United States, including Illinois. And the wheel was used for the purposes for which that defendant manufactured the product for, on a car. Car accident happened in Illinois. The plaintiff sued that Chinese defendant. And this court held that the acts of that defendant, that Chinese company defendant, was the sale to the facilitator in China. Once that happened, it was the facilitator's acts that brought that product into the state of Illinois. And the acts of that facilitator could not be considered when determining whether specific personal jurisdiction applied over that Chinese defendant. Here, we have an analogous situation. And it's even a stronger argument because here, Samsung never sold to any distributor anywhere in the United States or anywhere else, even Illinois, for that distributor to then sell it to a company or a retailer for it to go into an e-cigarette or a vaping device. So to answer your question on the third party, on the some other party, yes. There's some other party out here, out there doing this. But that's not the acts of Samsung. And that's not what the law says the court must take into consideration when determining whether there's specific personal jurisdiction over Samsung. So, another. Counselor, if I could, just on somewhat of an initial matter. The record in this case appears to be devoid of a transcript from the hearing. But there is also no bystander's report or a brief statement of the facts that was submitted. Is that accurate? There is no record of the hearing. Correct. There's an order. The trial court did not have a court reporter. And that I should have had my own personal court reporter there present. That did not happen, unfortunately. So there's no transcribed record of the hearing in front of the trial court judge. Correct. You did not submit any subsequent bystander's report or agreed upon statement of facts for this court to consider. I did not know.  Thank you. Thank you, Judge. Another aspect to go into and a point I want to touch on that the plaintiff argues in their appellate court brief is this misuse argument that they say we're making. So they're saying we're making a misuse argument here that the battery is only supposed to go to these specific end users. That it wasn't. It's not supposed to be in these products. That is all true. It's not supposed to be in these products. But I think the distinction here is we're not arguing that for purposes of jurisdiction. That is clearly a liability argument, right? What we are arguing here is Samsung's conduct. So Samsung never has a reasonable expectation that this product will be used in an e-cigarette vaping device because of the way it sells these products. So it never, there's no evidence that it ever would sell these products directly to a vape distributor or retailer that would resell that to the individualized consumer, just like we have here. So it's not a misuse per se argument that goes to liability. What we're saying is that we never, we don't have an expectation that we should be sued or hailed into court for this type of lawsuit because of the actions that Samsung itself takes when distributing this product for specific uses. This is not one of those specific uses. So it's not a misuse argument. It's a, what are the reasonable expectations of Samsung here when it distributes these products? And what are the reasonable expectations for what Samsung should be expected to defend in Illinois court or elsewhere? And I believe the plaintiff cites the recent U.S. Supreme Court decision in Ford v. Montana in supporting their position on this. But I believe Ford v. Montana actually supports our position more strongly. And there, as your honors may well be aware, in the Ford case, it was another personal injury car type case in Montana in one other jurisdiction. The cars were sold outside of the jurisdictions to the plaintiffs, but the incidents occurred in their respective forums. There, the court held that because Ford had an extensive sale, distribution, marketing, they advertised by all means possible, they had dealers selling, maintaining, and repairing these subject products in the forums, that they should be reasonably anticipated to be being hauled into these forums to defend against suits for these products. Here, we have a different story. We do not sell, advertise, manufacture, or distribute these products whatsoever for use in individualized consumer uses, such as e-cigarette or vaping devices, where the individual should get their hands on. So based solely on Samsung's conduct itself, they shouldn't have a reasonable expectation of being held into Illinois court for an e-cigarette vaping injury on a lithium-ion battery that it did not sell for those purposes, and it did not place into the stream of commerce for those purposes. Counsel, I have a question. During this trial, did the plaintiffs ever ask for jurisdictional discovery pursuant to Illinois Supreme Court Rule 201, Bill? They did not, Your Honor. Did you? Did I? Yes. To try to address some of these issues? We did not, but we provided our own evidence in that form of affidavit to try to clear up these issues for the court to show that there is no specific personal jurisdiction here. Okay, go ahead. Thank you. Yeah, there – Samsung here – and I think the main point is that they don't sell these to be used in these types of products. They're – they sell them for specific uses.  I don't think we need any further jurisdictional discovery to go to your point, Judge Siegmund, to determine whether there's relatedness here. So, while I think it's clear that the plaintiff has not met their burden on purposeful availment, I think it's also very clear that not only have they not met their burden on the second step, the relatedness aspect, but Samsung has gone above their burden and provided evidence to the contrary, that there can be no relatedness here with regard to plaintiff's specific claims. And I would yield the rest of my time to the court for any further questions at this time. I see none. Thank you, counsel. Mr. Prince, on behalf of the FBI, it's good to see you. Thank you, Your Honors. Initially, I know I've been doing this for a while, and I still feel uncomfortable sitting while addressing the court in any proceeding. So, it makes me a little uncomfortable, but anyway. Just pretend you're standing, and so are we. The times we live in now. I think this case presents us with a stark contrast of intent versus expectation. Versus reality. I have heard Mr. Dowling talk in his presentation today, and in his briefs, that Samsung never intended this 18650 lithium-ion battery to be sold directly to the individual consumer. They did not intend for it to be used in a vaping device or an e-cig. That's their intention. They don't deny that they knew that that's how this 18650 battery at issue was being used. In the materials that I presented in the trial court, there was an affidavit from another case involving one of Samsung's employees, a Mr. Shin. And he confirmed that Samsung, in fact, had knowledge that this 18650 lithium-ion cell battery was being used in vaping devices. Counsel, the jurisdictional inquiry does have to focus on what Samsung did, not what other did, with Samsung's product, right? I agree with that, Your Honor, yes. So the fact that other people may be using it in Illinois, may be making it available in Illinois, doesn't tell us anything about what Samsung's not only intended conduct, but even understandable consequences of its conduct were. Ordinarily, Your Honor, I agree with that statement. But in this case, if we look at the particular situation in this case, these batteries are basically a component part. Samsung expects, knew, intended for these batteries to be inserted in various household products. They may not have intended for it to be inserted in this particular vaping device, but they knew it was being used that way. They know that the battery is not being sold on its own, necessarily, although I did cite some examples of some stores in Illinois that sold their batteries in their stores, vaping stores, MeVape, for example, and another store in Lombard, Illinois. The MeVape and Joliet, you had to be physically present to purchase the battery. They didn't have an online presence, but they knew that. So their conduct, despite what they say, what they intended, their conduct is they knew it and they kept shipping it, knowing that they were going to be used in the manner in which they were being used. So I agree, Your Honor, that to some degree, we've got to look at their conduct and what their intent is. But to a larger degree, we've got to look to what their stated intent is versus what their conduct was. They may not have intended it, but they knew it was happening. They knew it was coming into the stream of commerce. Do you have a case that says knowledge of a third party's actions is adequate to establish personal jurisdiction? I do not have a specific case at my fingertips. This might be it, but I think if we look at like the Ford case and some of the other cases where Ford knew that their product was being shipped to all the different states in the union, it wasn't a component part like a battery. It was the vehicle that they were being sued for. There's, I don't see a difference between that and this in the sense that Samsung continued to place these products for all consumers in this country, including in Illinois, to be used. Again, I keep coming back to this and I'm sorry for this, but their intent is belied by what their content, their conduct is. Their expectation by counsel's very own admission is that they knew that when they sold this product to the sophisticated third party entities, their expectation was that those third party entities would put that battery into their product and sell it to  That's been on record as far back as... David, what you just described does not establish personal jurisdiction. Well, I think if you look at that in combination with their overall presence in the state of Illinois, with all the other lithium ion batteries that they sell that are used in products that are sold to Illinois consumers, that's... Samsung is arguing without arguing the strict causality requirement that I think has been rejected by the US Supreme Court. You can look at their entire presence with a similar product. Doesn't have to be the exact product, but the fact that they ship these lithium ion batteries, 18650s in particular, that are used in other products that are sold, that shows that they... Well, no, no, no, no. You blurred the meaning of product there. You didn't go to another Samsung product. You talked about what other people's products were with one Samsung product. Well, that was an unfortunate misstatement on my part, Your Honor. I am specifically talking about Samsung's 18650 lithium ion batteries that are used in many products that consumers... You're still committing the same... You were saying that it was because of Samsung's other products that causes the reach to go one Samsung product. Correct, Your Honor. That one Samsung product, the lithium ion battery, is used to power other products, not necessarily manufactured by Samsung, within the state of Illinois. And they benefit from that entry into the Illinois market by selling those products knowing how they're going to be... Does the record show that in the state of Illinois? Yes, Your Honor. And in my additional fact statement, I talk about that and talk about different stores and I cite different internet sites. They're used in Makita drills. But those are not all this product. Judge, I think I do tie the lithium ion cell batteries from Samsung... You're doing it again. That's a class of products. That's not this product. And I'm not saying the argument is good or bad. I'm just trying to understand it. So you're arguing then that multiple different types of Samsung lithium ion batteries are where does that fit in the jurisdictional analysis? Well, it shows that they have a presence in Illinois. It shows that they should have a reasonable expectation to be held in the court to answer for the defectiveness of their product. But does that not just move the question to another product? We don't know how those products get here. We don't know what Samsung's marketing was to get those products here. All we know is about this product. The other lithium batteries. I couldn't tell because the box was still around your screen. I'm saying we don't know anything about what their conduct was with respect to these other lithium batteries. That's correct, except that they came from Samsung. Right. And we know the Supreme Court says jurisdiction does not just travel with the product. That's correct. Counsel, I have a question. At the trial level, this case is undergoing consideration. Did you ask the trial court to allow jurisdictional discovery pursuant to Illinois Supreme Court Rule 201 to help? Yes, Your Honor, I did. In the brief that I filed, I specifically asked the trial court for leave to conduct personal jurisdiction if she felt that additional evidence was needed. Because the trial court denied Samsung's motion to dismiss, that issue was never actually addressed and no formal personal jurisdiction discovery was ever conducted. Counsel, that's maybe too clever by half. That's saying if you go ahead and deny their motion, Judge, then we don't need discovery. But if you're going to grant it, then I'd like discovery. I mean, if you're going to stand up and let the judge decide the issue, you have to exercise your right for discovery before the judge is asked to decide the issue. You could have done that and you didn't. That's correct. We could have done that, but we didn't want to waste any more resources than we need to. I felt that the record we submitted was complete and thorough and sufficient to defeat the motion. But if you lost it, you wanted to do discovery. Well, that is true. Is your position in that regard the same here on appeal? That is, are you asking this court, if we are inclined to reverse the trial court's determination, that in the process we should remand to permit you to pursue jurisdictional discovery? I did make that request to my brief, yes, Your Honor. Why should we do that? Well, so the issue is decided on a complete record. Well, see, as Justice Dougherty just pointed out, the only reason we don't have a complete record regarding what might have been disclosed pursuant to jurisdictional discovery is you didn't pursue it. So we're requiring, in this case, the defendant to appeal that ruling, and if we agree with the defendant's position, now we go back and the case isn't over yet with the trial court because you should get a second bite at the apple. Is that your position? Well, I guess one could look at it that way. That is not what my intent was. My intent was to reserve and preserve judicial resources and move this matter to as complete and as quick a resolution as possible. Lesson learned. Next time, I won't worry about that. I will conduct personal jurisdiction discovery and delay the case further. So you may be able to counsel. I mean, under a 201L, the trial court has to grant that request. I think that's one of these situations. It really does seem that you didn't address what you needed to address ahead of time, and in the event you become unhappy with a ruling, then you want to explore new discovery. I struggle with whether you have a case or any authority to support that position. I don't have any case law that I've cited specifically addressing that position. You may continue. Your Honors, I have made the point that along with your assistance that I wanted to make today, I can't think of anything else and I don't need to take any more of your time unless you have questions. I see none. Thank you, counsel. Thank you. Mr. Dowling, any rebuttal, sir? Very, very briefly, Your Honor. Okay. With regard to the discovery issue and whether it should go back down, I think it's clear our position is it should not, and I think you have enough evidence on the relatedness aspect and the third-party unilateral conduct to make the decision to reverse the trial court. On this issue, I don't think any further jurisdictional discovery is not going to change what's in that affidavit. You know, what is in that affidavit, counsel, I'm going to tell you is not maybe all that should be there. When you do things saying we never conducted any business, that is somewhat opaque to try to look through that phrase and understand what it meant. That we did business with only sophisticated customers, don't know where they are. There is a degree of cloudiness in that affidavit that doesn't seem accidental. Sure. May I address that, Your Honor? I'm hoping you will. Sure. So what I think is clear from the affidavit is that these cells were never sold by Samsung to be used by an end consumer in these products. And I think that is the issue here. So while, you know, there could, you know, we could have more information, obviously. But the other thing is, we have no idea what Samsung does to conform the ultimate sale to this intention. I mean, Home Depot can sell nails without the intention that it can be used in X, Y, and Z, but they're still just selling nails. I don't know what you do to police, enforce, or bring into compliance actual conduct, you know, with your intention. Sure. And are you asking for any personal knowledge I have on behalf of what the trial? No, I'm saying that the record is thin because your affidavit is somewhat conclusory. We don't really, I don't know what that means about what Samsung intent. I would think Samsung's intent would be to sell the product. I don't know what more its intention was or how much it cared about who was using it and for what. May I address that, Your Honor? Please. So, you know, I think the intent has been thrown around a lot. But what I think actually the issue is, is Samsung's objective, reasonable expectation of where these products are going. And that is what the affidavit outlines, is that they're not going to vape shops. They're not going to retailers to be sold directly as just the batteries themselves. But when you're aware of it listed on the Walmart website, is that not a reasonable expectation that that's where it's going? Meaning everywhere? Yeah, so knowledge, awareness, that's a merits issue, I think. I don't think that's a personal jurisdiction issue. Well, you just said the issue was reasonable expectation. So if it's on Walmart's website, wouldn't your reasonable expectation would be that it could go anywhere in the U.S.? Well, it's the objective, reasonable expectation based on Samsung's actions itself. So based on their actions itself, they don't have a reasonable, objective expectation that they're sold to the individual consumer based on where they are selling them themselves. So if it ends up at a vape shop like this, it's not Samsung's doing. It is some unilateral third party. It's what I think the trial record reflects. So for those reasons, we ask that this court reverse the ruling of the trial court based on the de novo review. I yield any remaining time I have for any further questions from your honors. Thank you very much for your attention to this matter today. I see none, counsel. Thank you very much for your arguments. And this court will take the matter in advisement and stand in recess.